UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LATRICE UTLEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:16-cv-01450-JMS-MJD |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) ) ) ) |
| Defendant. | ) ) |

## **ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Latrice Utley filed for supplemental security income on April 27, 2012 and disability insurance benefits on May 3, 2012, alleging a disability onset date of January 1, 2012. [Filing No. 16-2 at 20.] Her applications were denied initially, [Filing No. 16-4 at 4; Filing No. 16-4 at 8], and upon reconsideration, [Filing No. 16-4 at 13; Filing No. 16-4 at 20]. Administrative Law Judge ("ALJ") D. Lyndell Pickett held a hearing on September 17, 2014. [Filing No. 16-2 at 38.] On October 21, 2014, the ALJ issued an opinion concluding that Ms. Utley was not disabled as defined by the Social Security Act. [Filing No. 16-2 at 20-31.] The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 16-2 at 20-31.] Ms. Utley filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires

1

an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists to support the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [she] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [she] must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

2

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Utley was thirty-seven years old at the time she applied for social security benefits. [Filing No. 16-3 at 2.] She has obtained a GED and performed past relevant work as a baker, laborer, lead coordinator, and machinist. [Filing No. 16-6 at 6.][1]

---

[1] Both parties provided a detailed description of Ms. Utley's medical history and treatment in their briefs. [Filing No. 18; Filing No. 23.] Because that discussion implicates sensitive and otherwise confidential medical information concerning Ms. Utley, the Court will simply incorporate those facts by reference herein and only detail specific facts as necessary to address the parties' arguments.

The ALJ followed the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4) and ultimately concluded that Ms. Utley is not disabled. [Filing No. 16-2 at 20-31.] The ALJ found as follows:

- At Step One, the ALJ found that Ms. Utley has not engaged in substantial gainful activity since January 1, 2012, the date of her application for benefits. [Filing No. 16-2 at 22.]

- At Step Two, the ALJ found that Ms. Utley has the following severe impairments: morbid obesity, degenerative disc disease in the cervical and lumbar spine, left hip disease, and headaches. [Filing No. 16-2 at 22.]

- At Step Three, the ALJ found that Ms. Utley does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 16-2 at 24.]

- At Step Three but before Step Four, the ALJ found that Ms. Utley has the RFC to "perform medium work . . . except she can occasionally crawl and climb ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch, and climb ramps or stairs; can perform simple, routine and repetitive tasks; and can have occasional interaction with the general public." [Filing No. 16-2 at 25.]

- At Step Five, the ALJ concluded that considering Ms. Utley's age, education, work experience, and RFC, and relying on the testimony of the vocational expert ("VE"), Ms. Utley is capable of performing past relevant work as a warehouse worker and warehouse checker. [Filing No. 16-2 at 29.] In addition, the ALJ found that there are other jobs existing in the national economy that Ms. Utley can perform, including meat clerk, machine packager, and laundry worker. [Filing No. 16-2 at 29-30.]

Ms. Utley asked the Appeals Council to review the ALJ's decision, but that request was denied, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 16-2 at 20-31.] Ms. Utley filed this civil action pursuant to 42 U.S.C § 405(g), asking this Court to review her denial of benefits. [Filing No. 1.]

## III.
### DISCUSSION

Ms. Utley raises several issues on appeal, and the Court will address them as follows: (1) whether the ALJ erred in his analysis of Ms. Utley's credibility; (2) whether the ALJ adequately considered Ms. Utley's magnetic resonance imaging ("MRI") findings of her spine; (3) whether the ALJ erred when he found that Ms. Utley's depression and anxiety are not severe; and (4) whether the ALJ failed to describe the specific functions of Ms. Utley's past relevant work in accordance with Social Security Ruling ("SSR") 82-62. [Filing No. 19 at 5.] The Court will address the issues accordingly.

### A. Credibility Analysis

Ms. Utley argues that the ALJ failed to take into account the fact that she experienced side effects from taking medication, and that he erroneously noted that Ms. Utley did not engage in pain management. [Filing No. 18 at 12.] Ms. Utley further claims that the ALJ misconstrued and placed a heavy emphasis on Ms. Utley's activities of daily living. The Court will address her arguments in the subsections below.

Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska*, 454 F.3d at 738. The absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), but when faced with evidence both

supporting and detracting from a claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court[,]" *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). In "determining the credibility of the individual's statements, the adjudicator must consider the entire case record," and a credibility determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." *Prochaska*, 454 F.3d at 738.

      *1. Side Effects & Pain Relief*

Ms. Utley claims that the ALJ erroneously found that Ms. Utley did not experience side effects from medication. [Filing No. 18 at 12-13.] She claims that the record shows Ms. Utley experienced drowsiness, diarrhea, anxiety, equilibrium problems, melancholy, and sadness. [Filing No. 18 at 12-13.] She further points out that the ALJ wrongfully stated that she "has not engaged in pain management or other moda1ities for pain relief," when she claims the record shows that she has sought various forms of medical treatment for pain relief. [Filing No. 18 at 13.]

In response, the Commissioner agrees that Ms. Utley complained of side effects from the medication to her providers, but argues that "[t]here are no apparent reports of such symptoms to [her] providers." [Filing No. 23 at 13.] The Commissioner further claims that the ALJ did consider Ms. Utley's pain and treatment by pointing out that she controlled it with medication. [Filing No. 23 at 14.]

Ms. Utley did not file a reply brief.

"Although [the Court] afford[s] an ALJ's credibility finding 'considerable deference' and will overturn it only if 'patently wrong,' the ALJ must consider the claimant's level of pain, medication, treatment, daily activities, and limitations, and must justify the credibility finding with specific reasons supported by the record." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)

6

(internal citations omitted).  In addition, the ALJ must consider "the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  SSR 96-7p, 1996 WL 374186 (July 2, 1996).

The ALJ's decision notes that Ms. Utley "has been prescribed several medications for back pain, particularly Cymbalta, Lyrica, and Oxycodone," and that she "reported to Dr. Sadafi that prescribed medications helped reduce her pain, and the treatment notes show good response from medical management."  [Filing No. 16-2 at 27.]  The ALJ then erroneously noted that Ms. Utley "did not report side effects from medication, and the record fails to demonstrate adverse effects from medication." [Filing No. 16-2 at 27.]  In fact, Ms. Utley points to several parts of the record that demonstrate that she experienced side effects from medication.  In one of the disability reports, Ms. Utley noted that she experienced drowsiness from different medications.  [Filing No. 16-6 at 35.]  She also points to the medical records from Midtown Community Mental Health Center ("Midtown"), which note that Lyrica caused her diarrhea, anxiety, and equilibrium problems. [Filing No. 16-10 at 6.]  During her hearing, Ms. Utley testified that at the time, she was only taking Cymbalta and that Lyrica caused her to experience melancholy and sadness.  [Filing No. 16-2 at 50.]  Even the Commissioner concedes that the record demonstrates that Lyrica caused Ms. Utley to experience side effects.  [Filing No. 23 at 13.]  Because the ALJ expressly stated that the record fails to demonstrate adverse effects from mediation, the Court cannot discern whether the ALJ accurately accounted for all of Ms. Utley's symptoms and limitations.  *See, e.g., Robben-Cyl v. Colvin,* 2013 WL 1087556, at *2 (N.D. Ill. Mar. 14, 2013) (noting that the issue of side effects from medication could be a central issue to the disability analysis).  Remand is required on this issue.

Moreover, the Court finds that the ALJ's statement that Ms. Utley has not engaged in pain management or other modalities for pain relief contradicts his previous findings. [Filing No. 16-2 at 27.] Throughout the decision, the ALJ acknowledges that Ms. Utley experiences pain due to her impairments, particularly with her back and legs, and that she took medication and underwent other medical management procedures to alleviate the pain. Accordingly, the ALJ on remand should clarify this statement, or characterize it in a manner that accurately reflects the record.

2. *Activities of Daily Living*

Ms. Utley argues that the ALJ has "entirely skewed" her activities of daily living, and cites to various parts of the record that she claims describe greater limitations when she engages in those activities. [Filing No. 18 at 14-15.] She contends that her ability to engage in certain activities of daily living does not equate to her ability to work. [Filing No. 18 at 14-15.]

In response, the Commissioner argues that although the ALJ "did not specifically mention every qualification in how [Ms. Utley] performed her activities, he did mention that she did several activities at a slower pace" and that "there is no indication that the ALJ placed an undue weight on [Ms. Utley's] activities of daily living, or that he equated [them] with an ability to perform full-time work." [Filing No. 23 at 15.]

One of the many factors that the ALJ considers in the credibility analysis is the claimant's activities of daily living. SSR 96-7p, 1996 WL 374186 (July 2, 1996). The Seventh Circuit Court of Appeals cautions however, that the claimant's "ability to struggle through the activities of daily living does not mean that she can manage the requirements of a modern workplace." *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011).

In considering Ms. Utley's activities of daily living, the ALJ found that "[d]espite physical pain, [she] continues to engage in activities that are not supportive of disabling limitations. Albeit

8

at a slower pace, [she] can cook, mnage (sic) self-care, do light cleaning, care for her children, drive, go to the store as needed, go to the park, and attend appointments." [Filing No. 16-2 at 28.] This explanation, however, is vague given Ms. Utley's citations to the record that describe that she can engage in those activities, but with certain limitations. For instance, she claims that she goes to the grocery store twice a month and that she uses the "in store scooter." [Filing No. 16-6 at 17; Filing No. 16-6 at 26.] Ms. Utley asserts that although she cares for her children, she receives assistance from her thirteen year-old son and her sister, who spends the night when Ms. Utley's children are with her. [Filing No. 16-2 at 52-53; Filing No. 16-2 at 56.] She also claims that her family members keep her children on the weekends. [Filing No. 16-6 at 22.] Ms. Utley further contends that she sometimes receives assistance in bathing, dressing, and fixing meals. [Filing No. 16-6 at 43.] She claims that she can no longer take her son to the park, although it used to be one of her hobbies. [Filing No. 16-6 at 18.] The Court is not indicating that the ALJ is required to accept Ms. Utley's statements and incorporate greater limitations in the RFC, given that it is the ALJ's duty to determine whether she is credible. Rather, the Court points out that the ALJ gave a vague characterization of her daily activities without citing to the record, and should on remand consider all of the evidence. Accordingly, this issue requires remand.

### B. MRI Findings

Ms. Utley claims that the ALJ minimized "the full findings of the cervical and lumbar MRIs." [Filing No. 18 at 12.] She claims that the ALJ did not address the full findings from her MRIs, particularly related to the following: disk bulging, mild central canal stenosis, and minimal cord flattening at C5-C6; degenerated discs with diffuse disc protrusions at L4-L5 and L5-S1; and central canal stenosis and cord flattening at C5-C6; and bilateral neural foramen narrowing at L4-L5 and L5-S1. [Filing No. 18 at 12 (citing Filing No. 16-2 at 26; Filing No. 16-7 at 9).]

In response, the Commissioner argues that in regards to Ms. Utley's cervical and lumbar MRIs, the ALJ is not required to summarize every finding in every individual medical record and that the ALJ discussed most of the findings. [Filing No. 23 at 13.] In addition, the Commissioner claims that the records that Ms. Utley points to indicate "mild," "minimal," or "not significant" findings. [Filing No. 23 at 13.]

The ALJ must determine an individual's RFC, or "what an individual can still do despite his or her limitations," based upon medical evidence as well as "other evidence, such as testimony by the claimant or his friends and family." *Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); *Craft*, 539 F.3d at 676). "In making a proper RFC determination, the ALJ must consider all of the relevant evidence in the record, 'even [limitations] that are not severe, and may not dismiss a line of evidence contrary to the ruling.'" *Murphy*, 759 F.3d at 817 (quoting *Villano*, 556 F.3d at 563).

The Court finds no issue with the ALJ's characterization of the evidence. In his decision, the ALJ acknowledged that Ms. Utley "exacerbated the pain in her back, which prompted a referral for MRIs" and pointed out that the MRIs of the cervical and lumbar spine revealed "disc bulge at C5-C6, L4-L5, and L5-S1 with disc disease, but without significant central canal stenosis or spinal cord compression." [Filing No. 16-2 at 26.] The ALJ cites to the same records that Ms. Utley points to, so it is clear that the ALJ considered those findings. Moreover, the ALJ used the language that the physician used in describing the MRI findings. The RFC determination does not need to "'contain a complete written evaluation of every piece of evidence,'" *Murphy*, 759 F.3d at 817-18; *McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)), but it must provide an "'accurate and logical bridge' between the evidence to the conclusion that the claimant is not disabled," *Craft*, 539 F.3d at 673. Moreover,

Ms. Utley has not demonstrated that the parts of the MRI findings that she points to undermine the ALJ's conclusion. The Court finds no error with this issue.

### C. Depression & Anxiety

Ms. Utley argues that the ALJ erred at Step Two of the Analysis when he noted that Ms. Utley's depression and anxiety are not severe impairments. [Filing No. 18 at 18.] Ms. Utley claims that she began treatment at Midtown for her diagnosis of "Major Depressive Disorder, Recurrent, Moderate and Adjustment Disorder with Anxiety." [Filing No. 18 at 18.] She claims that the records show that she experienced various symptoms associated with her diagnosis and she attended regular therapy for over a year. [Filing No. 18 at 18.] She further asserts that her RFC analysis must be based on all relevant medical evidence, including evidence related to both severe and non-severe impairments. [Filing No. 18 at 19-20.]

In response, the Commissioner claims that the ALJ described the evidence regarding Ms. Utley's depression and anxiety, and explained under Step Two why those diagnoses are not severe impairments. [Filing No. 23 at 8.] The Commissioner described the evidence that the ALJ considered, such as the findings from Dr. Schmutte's consultative psychological examination, her continued use of Cymbalta, and her counseling sessions at Midtown. [Filing No. 23 at 9.] The Commissioner then points out that the ALJ considered this evidence when making his RFC determination, and limited her to "occasional contact with the public after indicating that [she] had some complaints about being anxious around crowds, but noting that she maintained regular contact with her family, went out in public when needed, and interacted appropriately with her doctors and their staff." [Filing No. 23 at 19.]

"[I]f a plaintiff satisfies [her] burden of establishing that [she] suffers from any severe impairment, the ALJ simply must continue to step three of the analysis." *Raines v. Astrue*, 2007

11

WL 1455890, at *7 (S.D. Ind. 2007). "[N]o error could result solely from [the ALJ's] failure to label an impairment as 'severe'. . . . What matters is that the ALJ considers the impact of all of the claimant's impairments – severe and non-severe – on [her] ability to work." Id.

The Court finds Ms. Utley's arguments unavailing. The ALJ determined that Ms. Utley's depression and anxiety are not severe impairments, but did find that she had severe impairments of morbid obesity, degenerative disc disease of the cervical and lumbar spines, left hip disease, and headaches, and therefore continued with Step Three of the Analysis. [Filing No. 16-2 at 22-23.] He noted that her depression and anxiety did not cause more than a minimal limitation in her ability to perform mental work activities. [Filing No. 16-2 at 23.] Thereafter, the ALJ discussed how the evidence related to Ms. Utley's depression and anxiety were incorporated into the RFC. In particular, he discussed the findings from the consultative examination, pointing out that Ms. Utley appeared depressed and tearful, had minimal difficulty in tending to mental status items, and had notable cognitive abilities. [Filing No. 16-2 at 23.] The ALJ then discussed her continued use of Cymbalta, and that she started outpatient counseling at Midtown. [Filing No. 16-2 at 23.] Lastly, he indicated that although her depression and anxiety are not severe impairments, he still "implemented unskilled work and included social restrictions. . . ." [Filing No. 16-2 at 23.] In the RFC determination, the ALJ in part noted that she can perform medium work and can have occasional interaction with the public. [Filing 10No. 16-2 at 25.] Ms. Utley states that the ALJ discussed only some of the records from Midtown, but she fails to explain to what extent those records demonstrate more limitations. She even acknowledges in her brief that the records demonstrate she had "mild to moderate impairment in concentration and with a tearful affect." [Filing No. 18 at 25.] Accordingly, the ALJ built a logical bridge from the evidence to the conclusion, and the Court finds no error.

### D. Past Relevant Work

Lastly, Ms. Utley argues that the ALJ violated SSR 82-62 because he failed to discern the specific functions of her past relevant work before concluding that she could return to work. [Filing No. 18 at 21.] She claims that the ALJ concluded that she could perform her past relevant work as a warehouse worker and warehouse checker, but that he failed to describe the functions that are required for her past relevant work. [Filing No. 18 at 21.] In response, the Commissioner argues that the ALJ sufficiently supported his findings and noted that he relied on the VE's testimony from the hearing.

In the decision, the ALJ merely noted that the VE's testimony regarding Ms. Utley's ability to perform her past relevant work as a warehouse worker and warehouse checker is "credible, persuasive, [and] uncontradicted." [Filing No. 16-2 at 29.] Given that the decision is being remanded on other grounds, the Court instructs the ALJ to describe what functions are required to perform her past relevant work to the extent that the ALJ's RFC determination results in the same findings.

### IV.
#### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Ms. Utley's benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above. Final Judgment will issue accordingly.

Date: 8/24/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana